STATE of North Dakota, Plaintiff and Appellee,

v.

John Lee MURALT, Defendant and Appellant.

Cr. No. 1090.

Supreme Court of North Dakota.

Oct. 28, 1985.

John T. Goff, Asst. State's Atty., Fargo, for plaintiff and appellee State of North Dakota.

Edward J. Murphy, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

John Lee Muralt appealed from a judgment of conviction of possession of a pistol by a felon in violation of Section 62–01–04(1), N.D.C.C. Muralt argues that the lower court erred in refusing to suppress the weapon and alleges that the discovery of the weapon through an inventory search of his automobile violated the Fourth Amendment of the United States Constitution. We affirm.

On October 13, 1984, several Fargo police officers were dispatched to investigate a disturbance caused by the continuous sound of an automobile horn. Officer Alex Popel arrived at the scene first and discovered Muralt unconscious on the front seat. One of his legs was extended outside the driver's side window; the other leg was leaning against the car horn. Popel awoke Muralt and required him to step out of the vehicle. Several other officers performed sobriety tests on Muralt. Upon failing the tests, Muralt was placed under arrest for being in physical control of a motor vehicle while under the influence of alcohol. The officers handcuffed Muralt and placed him in the back seat of Popel's car.

Following the arrest and placement of Muralt in the police car, Officer Popel decided to impound Muralt's vehicle. Popel obtained an impound inventory form from his patrol car and began the inventory search of Muralt's car. On the back seat of the vehicle Popel discovered a canvas bag. Inside the bag Popel discovered a sawed-off shotgun and several shotgun shells.[1]

The district court, in refusing to suppress the weapon, held that the search of the bag was an inventory search in conformity with *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman* the Supreme Court listed three needs that justified local police departments' following a routine practice of securing and inventorying an impounded automobile's contents: (1) the protection of the owner's property while it remains in police custody; (2) the protection of the police against claims or disputes over lost or stolen property; and (3) the protection of the police from potential danger. In its decision the *Opperman* Court held that an inventory search of an unlocked glove compartment was not unreasonable under the Fourth Amendment when prompted by the presence of a number of valuable items in plain view in the automobile and conducted pursuant to standard police department procedures.

■ The *Opperman* decision did not, however, reach the issue of whether an inventory search would justify the inspection of suitcases, boxes, or other containers found in the passenger compartment of an impounded vehicle. And the courts that have reached this issue, Federal as well as State courts, are in substantial disagree-

---

1. The lower court made no finding as to whether the canvas bag was zipped shut at the time Popel discovered the bag. Because of our holding today it is immaterial whether the unlocked bag was zipped or left open. There is no allegation that the impounding of the vehicle was improper.

ment.[2] Nonetheless, we believe that the policies underlying the inventory-search exception to the warrant requirement justify the routine inspection of the contents of unlocked containers found in the passenger compartment of an impounded automobile so long as the purpose of the search is to make an inventory of the items now under police control and not to discover evidence of a crime. See, e.g., *United States v. Griffin,* 729 F.2d 475 (7th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984). The reasons justifying inventory searches apply equally to the contents of containers.

Today's decision does not mean that we are oblivious to the strong expectations of privacy afforded to a person's suitcases and other containers that hold personal items. We are aware of the Supreme Court's observation that "luggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." *Arkansas v. Sanders,* 442 U.S. 753, 762, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235, 244 (1979). But the language contained in *Arkansas v. Sanders* does not convince us of the special sanctity of luggage found in the passenger compartment of an impounded automobile, especially in light óf the Supreme Court's more recent decision in *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983), that sanctioned the inventory search of a purse-type shoulder bag in the person's possession at the time of arrest and which was transported with him to the more secure confines of the police station.

In this case Officer Popel inspected the contents of an unlocked canvas bag discovered in the passenger compartment of Muralt's car to determine whether it had anything of value in it. The inventory search was conducted subsequent to the decision to impound the vehicle and in accordance with routine police department procedures. As such, the search was reasonable under the Fourth Amendment.[3] The trial court's decision to not suppress the weapon was correct. The judgment of conviction is therefore affirmed.

ERICKSTAD, C.J., and LEVINE, GIERKE and MESCHKE, JJ., concur.

---

**2.** Compare *Commonwealth v. Scott,* 469 Pa. 258, 365 A.2d 140 (1976) [contents of containers may be examined], with *United States v. Bloomfield,* 594 F.2d 1200 (8th Cir.1979) [contra]. See generally Annot., 48 A.L.R.3d 537 (1973 & Supp. 1985). In *State v. Gelvin,* 318 N.W.2d 302 (N.D. 1982), we quoted from the Eighth Circuit decision in *Bloomfield* that held that a knapsack should have been inventoried as a single item rather than opened and itemized. In *Gelvin,* however, we addressed only the constitutionality of the inventory search of an arrested person's wallet and explicitly "express[ed] no opinion as to the propriety of conducting inventory searches of closed or locked containers in general, . . ." 318 N.W.2d at 305. Thus the *Bloomfield* language quoted in *Gelvin* is merely dicta and cannot be used to infer a previous determination by this court as to the propriety of an examination of the contents of containers found in the passenger compartment of a properly impounded automobile. See, e.g., *Bakke v. St. Thomas Public Sch. Dist. No. 43,* 359 N.W.2d 117 (N.D.1984).

**3.** The issue of whether the North Dakota Constitution was violated was not adequately raised below or in the briefs and is therefore not considered on appeal.