UNITED STATES of America,
Plaintiff–Appellee,

v.

James Arthur MOOREHEAD,
Defendant–Appellant.

No. 94–50171.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 7, 1995.

Decided June 19, 1995.

Robert Ramsey, Jr., Ramsey & Price, Los Angeles, CA, for defendant-appellant.

Brent A. Whittlesey, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: MCKAY,* REINHARDT, and FERNANDEZ, Circuit Judges.

McKAY, Circuit Judge:

Mr. James Moorehead appeals his conviction under 18 U.S.C. § 922(g), possession of a firearm by a felon. He makes four claims of error: evidence obtained in violation of the Fourth Amendment was submitted at trial; evidence of bad character was presented to the jury in violation of Federal Rule of Evidence 404(b); the district court wrongfully cross-examined one of the defense witnesses; and, lastly, an erroneous sentence was imposed. The third of these claims has substantial merit and requires that we vacate Mr. Moorehead's conviction and remand for further proceedings. We also decide the first and second of Mr. Moorehead's claims because these issues are certain to arise again if he is retried. We refuse to speculate as to the outcome of this hypothetical second trial and therefore decline to address Mr. Moorehead's sentencing argument at this time.

The facts of this case are straightforward. On February 21, 1993, Mr. Moorehead was stopped for speeding. The officer asked Mr. Moorehead for his license. Mr. Moorehead replied that his license had been suspended or revoked, and produced a California identification card. The standard background check disclosed an outstanding warrant for Mr. Moorehead's arrest. The officer then arrested Mr. Moorehead and secured him in the back seat of the patrol car. A search of the passenger compartment of Mr. Moorehead's car revealed a loaded handgun. It is not disputed that he was at that time a felon and therefore could not legally possess a firearm.

At trial, the government called upon the officer to testify and introduced the handgun into evidence. Anticipating Mr. Moorehead's defense, the government also elicited incriminating testimony from several people with whom Mr. Moorehead had been living. These individuals indicated that they had seen a gun resembling the one discovered by the officer in Mr. Moorehead's possession on several occasions in the months prior to the arrest. Ms. Brandy Hanson testified that she had previously seen Mr. Moorehead pull a gun (which she identified as the gun in evidence) from under the seat of the car. Ms. Arianna Pace testified that, on the day of the arrest, she saw Mr. Moorehead leave the house with a gun and enter his car.

Mr. Moorehead countered the government's case primarily with the testimony of Ms. Deatrice Wright, an acquaintance of Mr. Moorehead's wife. Ms. Wright testified that on February 21 she borrowed Mr. Moorehead's car, drove to a park, bought a handgun resembling the one in evidence, and then hid that gun under the front seat. After she returned the car to Mr. Moorehead, he drove off before she could reclaim her weapon.

Mr. Moorehead also elicited testimony from Mr. Joel Bush, who admitted to being one of Mr. Moorehead's closest friends. On direct examination, Mr. Bush testified that he had not seen Mr. Moorehead in possession of a weapon either on February 21 or on any previous occasion. The cross-examination of Mr. Bush was somewhat more contentious. During the cross-examination, first the government, and then the district court (which assumed control of the questioning), attempted at great length to extract from Mr. Bush an admission that both he and Mr. Moorehead were drug dealers who spent the majority of their days selling narcotics in the park. The district court rebuffed defense counsel's continuing efforts to object and eventually in no uncertain terms forbad defense counsel from objecting at all.

The jury returned a verdict of guilty. This appeal followed.

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court promulgated a bright-line rule that incident to a lawful arrest a police officer may conduct a contemporaneous search of the passenger compartment of an automobile and the containers therein. *Id.* at 460–61, 101 S.Ct. at 2864. In *United*

The Honorable Monroe G. McKay, Senior Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

*States v. Lorenzo,* 867 F.2d 561, 562 (9th Cir.1989) (per curiam), we indicated that the applicability of this exception to the Fourth Amendment did not turn upon a defendant's actual ability to grab items in the passenger compartment. Given a lawful arrest, it is enough that the search be roughly contemporaneous with the arrest. *See id.* A defendant need not be in the automobile and may be effectively restrained. *See United States v. Howard,* 758 F.2d 1318, 1319 (9th Cir. 1985) (defendant handcuffed and out of the car); *see also Belton,* 453 U.S. at 456, 101 S.Ct. at 2862 (defendants dispersed along the roadside).

Our precedents therefore make plain the rectitude of the district court's refusal to suppress the evidence. There is no question but that the search was contemporaneous with the arrest. *United States v. Vasey,* 834 F.2d 782 (9th Cir.1987), cited in Appellant's brief, is therefore inapplicable in this case. *See Lorenzo,* 867 F.2d at 562.

■ We review the district court's admission of evidence under Rule 404(b) for abuse of discretion. *United States v. Corona,* 34 F.3d 876, 881 (9th Cir.1994). Rule 404(b) prohibits the use as evidence of uncharged bad acts except to the extent that such actions are probative of, *inter alia,* "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).

■ The district court plainly did not abuse its discretion in allowing Mr. Moorehead's living companions to testify that they had seen him with a gun on prior occasions. Mr. Moorehead's defense hinged upon Ms. Wright's testimony that she had placed the gun under the seat of Mr. Moorehead's car. The testimony elicited from Mr. Moorehead's housemates substantially rebutted Ms. Wright's statements and was thus germane to issues of knowledge and control. In fact, insofar as the testimony suggested that Mr. Moorehead had possessed this gun for a period of several weeks, it was not character

evidence at all but rather was introduced as direct evidence of the crimes charged. Its admission did not, therefore, constitute an abuse of the district court's discretion.

■ Mr. Moorehead does not dispute the broad authority of the district court to examine witnesses. *See Kennedy v. Los Angeles Police Dep't,* 901 F.2d 702, 709 (9th Cir.1989). Rather, Mr. Moorehead contends that the district court's questioning of Mr. Bush elicited inadmissible testimony. We review the district court's admission of evidence for abuse of discretion.

Our review of the judge's cross-examination leads us to conclude that testimony was admitted in contravention of Federal Rules of Evidence 404(b) and 403. The district court in its questions repeatedly returned to the admittedly dubious character and conduct of Messrs. Bush and Moorehead: the somewhat aimless daily routine—the bulk of their time together was spent driving about and "kicking it" in the park—enjoyed by the two men; the fact that neither had any obvious source of income; the fact that each owned a pager; the fact that Mr. Moorehead received numerous calls a day on his pager; the fact that Mr. Bush had previously dealt drugs; and Mr. Moorehead's status as a drug dealer. Defense counsel for Mr. Moorehead objected to each of these lines of questioning until, in effect, ordered by the district court to sit down and shut up.

The judge's extended forays into the two men's paging proclivities and their daily routine—collateral matters tangential both to the charge and to Mr. Bush's credibility—ran afoul both of Rules 404(b) and 403. The cumulative effect of the judge's interrogation could only have left the jury with the impression that Mr. Moorehead was a nasty man who sold drugs in the park—a crime for which he was not charged and that is, at best (the protestations of the district court notwithstanding), of only marginal relevance to the crime with which he was charged.[1] The evidence elicited (and, indeed, forcibly ex-

---

1. Indeed, the prosecution made this very argument during close: "Ladies and gentlemen, there's strong, strong inferential evidence in this case that the defendant is himself a drug dealer. That's a reasonable conclusion that you can

come to from the evidence." Moorehead Reply Excerpts from Record 1. While these arguably prejudicial and irrelevant statements were not appealed, they do tend to show the impact of the judge's questions.

tracted) by the judge thus gives rise to precisely those inferences that are forbidden by Rule 404(b). The government, hoping to skirt the rule, argues that the evidence that Mr. Moorehead was a drug dealer goes to knowledge, intent, or control. It is noteworthy, however, that nothing in Mr. Bush's testimony indicates that Mr. Moorehead ever used any gun in Mr. Bush's presence (while drug dealing, or "kicking," or answering pages), much less the gun in question (which is, after all, the gun of which the government must prove knowledge and control). Thus, again, the government's argument is reduced to the truism that because Mr. Moorehead was a drug dealer he was more likely to possess a gun and was therefore more likely to possess this gun—but this is precisely the logic which is forbidden in no uncertain terms by Rule 404(b).

 The evidence, in any event, oversteps the bounds of Rule 403. Even granting that the evidence of "kicking" and aimless wandering and pagers might have some very slight relevance to the crime with which Mr. Moorehead was charged, that slight probative value is substantially outweighed by the prejudice associated with the judge's questions. In suggesting that Mr. Moorehead was a drug dealer in possession of a firearm, the judge's line of questions could not help but stir the jury's emotions in a prejudicial fashion. The fact that it was the judge—and not the prosecution—that asked the questions could only exacerbate the damage done Mr. Moorehead's cause. The prejudice was likewise compounded by the district court's order to defense counsel to cease his objections to the judge's questions—an order of arguably dubious merit that prohibited defense counsel from even making an attempt to restrict the range of questioning.[2]

 We cannot find the erroneous admissions to be harmless error. We may only conclude that an error was harmless if it is "more probable than not that the erroneous admission of the evidence did not affect the jury's verdict." *United States v. Hill,* 953

F.2d 452, 458 (9th Cir.1991). The case against Mr. Moorehead, while strong, was not overwhelming in light of Ms. Wright's testimony. The line of questioning pursued by the judge effectively eviscerated Mr. Moorehead's defense and significantly reduced any possibility that the jury would acquit him. Weighing the merits of the defense against the extremely deleterious impact of the erroneous questioning, we cannot conclude that it was "more probable than not" that the verdict was not affected. *See also O'Neal v. McAninch,* —— U.S. ——, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (discussing harmless error standard applicable to close cases). We therefore vacate Mr. Moorehead's conviction and remand for a new trial.

REVERSED and REMANDED with directions to VACATE the judgment and grant a new trial.

---

2. Defense counsel asserts in his brief that the district court threatened him with contempt should he object once more. Defense counsel acknowledges that the record does not reflect

such a threat. The propriety of such a threat (if it in fact were made) is questionable given the ethical and constitutional obligations under which a defense counsel labors.